**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **NEMAN BROTHERS & ASSOCIATES, INC.,** | **Civil Action No. 1:24-cv-05666** |
| Plaintiff, | **Hon. John J. Tharp** |
| v. | |
| **THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,** | |
| Defendant. | |

## DEFENDANT NO. 16 HIBLUCO ANSWER TO PLAINTIFF'S COMPLAINT

Defendant No. 16 hibluco ("Defendant") hereby files its Answer to Plaintiff Neman Brothers & Associates, Inc. ("Neman" or "Plaintiff") Complaint ("Complaint"). Defendant denies the allegations and characterizations in Plaintiff's Complaint unless expressly admitted in the following paragraphs:

## INTRODUCTION

1.      This action has been filed by Neman in attempt to combat e-commerce store operators who trade upon Neman's reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use that same unauthorized and unlicensed products which infringe on Neman's copyrights (collectively, the "Infringing Products"). True and correct screenshots of the active e-commerce stores operating under the seller aliases and selling Infringing Products are shown in **Exhibit B** attached hereto.

**ANSWER TO PARAGRAPH 1:**

Defendant admits that it operates an e-commerce store. Defendant denies all remaining allegations in the paragraph.

1

2.     Neman created and owns all rights in and to the two-dimensional textile designs (the "Subject Designs") depicted in **Exhibit A**. Neman creates and sells the Subject Designs for purposes of textile printing on clothing. Neman holds a United States Copyright Registration covering the Subject Designs.

**ANSWER TO PARAGRAPH 2:**

Defendant lacks sufficient knowledge or information to admit or denies the allegations of this paragraph and therefore denies the same.

## JURISDICTION AND VENUE

3.     This Court has original subject matter jurisdiction over the claims in this action arising under the Copyright Act of 1976, Title 17 U.S.C., §§ 101, et seq., under 28 U.S.C. §§ 1331 and 1338(a), (b).

**ANSWER TO PARAGRAPH 3:**

Defendant admits that the plaintiff contends that the Court has subject matter jurisdiction under the Copyright Act of 1976, Title 17 U.S.C., §§ 101, et seq., and under 28 U.S.C. §§ 1331 and 1338(a), (b).  Defendant denies all remaining allegations in the paragraph.

4.     Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Illinois and this district, through at least the internet-based e-commerce stores accessible in Illinois.

**ANSWER TO PARAGRAPH 4:**

Denied.

5.     Defendants are further subject to personal jurisdiction in this district because each Defendant directly targets consumers in the United States, including in Illinois, through at least

the fully interactive commercial Internet stores operating under the Defendant domain names and/or the Online Marketplace Accounts identified in **Schedule A** attached hereto (collectively, the "Defendants" or "Defendant Internet Stores"). Specifically, the Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products infringing Neman's copyrighted designs. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accepts payment in United States Dollars, and on information and belief, has sold infringing products to Illinois residents. Each of the Defendants are committing tortious and illegal activities directed towards the state of Illinois and causing substantial injury in Illinois, and Neman's claims arise out of those activities.

**ANSWER TO PARAGRAPH 5:**

Defendant admits that it operates an e-commerce store. Defendant denies all remaining allegations in the paragraph.

6.     Alternatively, Defendants are subject to personal jurisdiction in this district under Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

**ANSWER TO PARAGRAPH 6:**

Denied.

7.     Venue is proper in this district under 28 U.S.C. § 1400(a) because Defendants and their agents are subject to the court's personal jurisdiction and therefore reside in this judicial district or may be found here.

**ANSWER TO PARAGRAPH 7:**

Denied.

8. Venue in this judicial district is otherwise proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not a resident in the United States and therefore there is no district in which any action may otherwise be brought.

**ANSWER TO PARAGRAPH 8:**

Denied.

## PARTIES

9. Neman is a California corporation that owns the right, title, and interest in the Subject Designs that is the subject of this action.

**ANSWER TO PARAGRAPH 9:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and, as such, denies the same.

10. Neman samples and sells hundreds of yards of fabric featuring the Subject Designs and publicly displays, advertises, and markets the Subject Designs globally.

**ANSWER TO PARAGRAPH 10:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and, as such, denies the same.

11. Defendants have the capacity to be sued under Federal Rule of Civil Procedure 17(b).

**ANSWER TO PARAGRAPH 11:**

Denied.

12. The Defendants in **Schedule A** (collectively, "Defendants") are individuals and business entities who, upon information and belief, reside primarily in foreign jurisdictions.

Defendants conduct business throughout the United States, including within Illinois and in this District, through the operation of fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has, upon information and belief, sold, offered for sale, and continues to sell, products featuring the Subject Designs to consumers within the United States and this District.

**ANSWER TO PARAGRAPH 12:**

Defendant admits it resides in a foreign jurisdiction and operates an e-commerce store. Defendant denies all remaining allegations in the paragraph.

13.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Illinois through the advertisement, offer to sell, sale, and/or shipment of infringing goods to residents in the State. The Defendants' offer for sale to consumers in Illinois is indicated in the screenshots included in **Exhibit B**.

**ANSWER TO PARAGRAPH 13:**

Denied.

14.     Upon information and belief, Defendants may have engaged in fraudulent conduct providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell infringing products.

**ANSWER TO PARAGRAPH 14:**

Denied.

15.     Upon information and belief, Defendants will likely continue to sell and offer for sale products featuring Neman's intellectual property, namely products featuring in whole, or in part, the Subject Designs, unless preliminarily and permanently enjoined.

**ANSWER TO PARAGRAPH 15:**

Defendant denies selling Neman's intellectual property namely products featuring in whole, or in part, the Subject Designs. Defendant denies all remaining allegations.

16.    Defendants use their Internet-based businesses to infringe the intellectual property rights of Neman and others.

**ANSWER TO PARAGRAPH 16:**

Denied.

17.    Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Neman's economic interests in the state of Illinois and causing Neman harm and damage within this jurisdiction.

**ANSWER TO PARAGRAPH 17:**

Denied.

18.    The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Neman's intellectual property rights and the destruction of the legitimate market sector in which she operates.

**ANSWER TO PARAGRAPH 18:**

Denied.

19.    Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Neman's intellectual property rights, including Neman's exclusive right to use and license such intellectual property rights.

**ANSWER TO PARAGRAPH 19:**

Denied.

20.    Neman is informed and believes and thereon alleges that at all times relevant hereto each of the Defendants were the agent, affiliate, officer, director, manager, principal, alter-ego,

and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Neman's rights and the damages to Neman proximately caused thereby.

**ANSWER TO PARAGRAPH 20:**

Denied.

## **JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER**

21.     In the past, Plaintiff was able to police infringements of its Subject Designs against identifiable infringers. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for policing actions to be undertaken. Plaintiff has attempted takedown procedures to remove the infringing products, but these efforts have proved to be unavailing as numerous additional seller profiles under new seller aliases continue to appear selling the same infringing products. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed plaintiffs and its ability to police its copyrights against the hundreds of anonymous defendants which are selling illegal counterfeits at prices substantially below the cost of licensing the original and earning revenues that rightfully belong to Plaintiff.

**ANSWER TO PARAGRAPH 21:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and, as such, denies the allegations.

22.     The evidence supporting Plaintiff's claims proves a cooperative counterfeiting network using fake eCommerce store fronts designed to appear to be selling authorized products. To be able to offer the counterfeit products for sale substantially below the cost of a license to use

the Subject Designs, while still being able to turn a profit after absorbing the cost of manufacturing, printing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As Homeland Security's recent report confirms, counterfeiters act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate artists while generating huge profits for the illegal counterfeiting network:

> Historically, many counterfeits were distributed through swap meets and individual sellers located on street corners. **Today, counterfeits are being trafficked through vast e-commerce supply chains in concert with marketing, sales, and distribution networks.** The ability of e-commerce platforms to aggregate information and reduce transportation and search costs for consumers provides a big advantage over brick-and-mortar retailers. Because of this, sellers on digital platforms have consumer visibility well beyond the seller's natural geographical sales area.

> The impact of counterfeit and pirated goods is broader than just unfair competition. Law enforcement officials have uncovered intricate links between the sale of counterfeit goods and transnational organized crime. **A study by the Better Business Bureau notes that the financial operations supporting counterfeit goods typically require central coordination**, making these activities attractive for organized crime, with groups such as the Mafia and the Japanese Yakuza heavily involved. Criminal organizations use coerced and child labor to manufacture and sell counterfeit goods. In some cases, the proceeds from counterfeit sales may be supporting terrorism and dictatorships throughout the world.

> . . .

> Selling counterfeit and pirated goods through e-commerce is a highly profitable activity: production costs are low, millions of potential customers are available online, transactions are convenient, and listing on well-branded e-commerce platforms provides an air of legitimacy

*See* Department of Homeland Security, Combating Trafficking in Counterfeit and Pirated Goods, Jan. 24, 2020, (*https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-piratedgoods*), at 10, 19 (emphasis added) attached hereto as **Exhibit C**.

**ANSWER TO PARAGRAPH 22:**

Denied.

8

23.     The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants use aliases to avoid liability by going to great lengths to conceal both their identities as well as the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables counterfeiters to stymie authorities:

> A counterfeiter seeking to distribute fake products will typically set up one or more accounts on online third-party marketplaces. The ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders. Rapid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked. On these sites, online counterfeiters can misrepresent products by posting pictures of authentic goods while simultaneously selling and shipping counterfeit versions.
>
> . . .
>
> Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors.

*Id*. at 5, 11, 12.

**ANSWER TO PARAGRAPH 23:**

Denied.

24.     Defendants also engaged in communications with each other to carry out infringing activities and evade liability. Specifically, Plaintiff is aware of websites such as QQ.com, Sellerdefense.cn, and others which sellers like the ones named here advise each other of newly filed copyright infringement cases involving the Infringing Products and collectively carry out tactics to evade liability for its wrongs.

9

**ANSWER TO PARAGRAPH 24:**

Denied.

25.     eCommerce giant Alibaba has also made public its efforts to control counterfeiting on its platform. It formed a special task force that worked in conjunction with Chinese authorities for boots-on the ground effort in China to stamp out counterfeiters. In describing the counterfeiting networks it uncovered, Alibaba expressed its frustration in dealing with "vendors, affiliated dealers and factories" that rely upon fictitious identities that enable counterfeiting rings to play whack-amole with authorities. *See* Xinhua, *Fighting China's Counterfeits in the Online Era*, China Daily (Sept.     19,     2017),     available     at     *www.chinadaily.com.cn/business/2017-09/19/content_32200290.htm* (**Exhibit D**).

**ANSWER TO PARAGRAPH 25:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and, as such, denies the allegations.

26.     Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over its reputation and goodwill as well as the quality of goods bearing the Subject Designs. The rise of eCommerce as a method of supplying goods to the public exposes brand holders and creators that make significant investments in their products to significant harm from counterfeiters. *See Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (**Exhibit C**) at 4, 8, 11.

**ANSWER TO PARAGRAPH 26:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and, as such, denies the allegations.

27. Not only are the creators and copyright holders harmed, but the public is also harmed as well. *See e.g., id.* at 3, 4.

**ANSWER TO PARAGRAPH 27:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and, as such, denies the allegations.

28. Plaintiffs' investigation shows that the telltale signs of an illegal counterfeiting ring are present in the instant action. For example, Schedule A shows the use of store names by the Defendant Internet Stores that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Defendant Internet Stores are using fake online storefronts designed to appear to be selling genuine copies of Plaintiff's Subject Designs, while selling inferior imitations of Plaintiffs' Subject Designs. The Defendant Internet Stores also share unique identifiers, such as design elements, SEO tactics like keyword stuffing, and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs registered Subject Designs, as well as to protect unknowing consumers from purchasing unauthorized copies and derivatives of the Subject Designs over the internet.

**ANSWER TO PARAGRAPH 28:**

Denied.

29.     The attached screenshots of the Infringing Products shown in **Exhibit B** also indicate that Defendants are collectively involved in the same counterfeiting ring or otherwise associated with each other. Specifically, several of the Infringing Product listings use the same photographs to advertise or the same model wearing the clothing.

**ANSWER TO PARAGRAPH 29:**

Denied.

30.     Thus, Neman brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq.*

**ANSWER TO PARAGRAPH 30:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 and, as such, denies the allegations.

31.     Joinder of all Defendants is permissible under Fed. R. Civ. P. 20(a)(2), which permits joinder of persons in an action where any right to relief is asserted against defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in this action. As stated above, joinder is proper here based on the logical relationship between the Defendants, the seller profiles, and the evidence of coordination amongst the sellers identified.

**ANSWER TO PARAGRAPH 31:**

Denied.

32. Each Defendant uses non-descriptive seller aliases making it difficult or impossible to identify their true identity, but upon information and belief, the sellers are acting simultaneously as part of a network of infringement to violate Plaintiff's rights.

**ANSWER TO PARAGRAPH 32:**

Denied.

33. Joinder of the multiple Defendants is permitted because Neman asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

**ANSWER TO PARAGRAPH 33:**

Denied.

34. Joinder of the multiple Defendants serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Neman, Defendants, and this Court.

**ANSWER TO PARAGRAPH 34:**

Denied.

35. This court has jurisdiction over the multiple Defendants. Venue is proper in this court for this dispute involving the multiple Defendants.

**ANSWER TO PARAGRAPH 35:**

Denied.

36. Neman's claims against the multiple Defendants are all transactionally and logically related. All Defendants are engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while

maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions. All Defendants undertake efforts to conceal their true identities from Neman to avoid accountability.

**ANSWER TO PARAGRAPH 36:**

Denied.

37.     All Defendants are engaging in the same infringing activities, i.e., displaying and offering Infringing Products for sale on *Amazon.com*, at the same time and therefore are undeniably involved in the same series of transactions or occurrences giving rise to this claim at the same time.

**ANSWER TO PARAGRAPH 37:**

Denied.

38.     Based on the Infringing Products quality and similarities in printing, Plaintiff has reason to believe that the products are sourced from the same vendor, manufacturer, or printing facility. Additionally, the sellers identified in Schedule A self-identify its location either in the same city in China or cities within close proximity to each other. Further, the product listings feature the same photographs and advertisements, further supporting that all Defendants named in Schedule A obtain the Infringing Products from a common source.

**ANSWER TO PARAGRAPH 38:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 and, as such, denies the allegations.

39.     Defendants are using infringements of Neman's intellectual property rights to drive Internet consumer traffic to their e-commerce stores and decreasing the size and value of Neman's legitimate marketplace and intellectual property rights at Neman's expense.

**ANSWER TO PARAGRAPH 39:**

Denied.

40.     Defendants, through the sale and offer to sell infringing products, are directly and unfairly competing with Neman's economic interests in the state of Illinois and causing Neman harm and damage within this jurisdiction.

**ANSWER TO PARAGRAPH 40:**

Denied.

41.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Neman's intellectual property rights, including Neman's exclusive right to use and license such intellectual property rights.

**ANSWER TO PARAGRAPH 41:**

Denied.

**CLAIMS RELATED TO PLAINTIFF'S SUBJECT DESIGNS**

42.     Neman owns all rights in and to the Subject Designs depicted in **Exhibit A**. Neman complied in all respects with the Copyright Act, 17 U.S.C. § 101, *et. seq.*, and is the sole owner of the exclusive rights, title, interests, and privileges in and to the Subject Designs.

**ANSWER TO PARAGRAPH 42:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 and, as such, denies the allegations.

43.     Prior to the acts complained of herein, Neman sampled and sold fabric bearing the Subject Designs to numerous parties in the fashion and apparel industries. Following that distribution, Plaintiff's investigation revealed that certain entities within the industry had

misappropriated the Subject Designs and were selling or manufacturing fabric and garments bearing illegal reproductions and/or derivatives of the Subject Designs.

**ANSWER TO PARAGRAPH 43:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 and, as such, denies the allegations.

44.     Each defendant targets consumers in the United States, including the State of Illinois, and offered to sell and, on information and belief, sold and continues to sell Infringing Products that violate Plaintiff's intellectual property rights to consumers throughout the United States, including Illinois.

**ANSWER TO PARAGRAPH 44:**

Denied.

45.     Defendants, and each of them, have willfully copied, reproduced, distributed, sold, and/or offered for sale Neman's Subject Designs for financial benefit by, without limitation, reproducing the Subject Designs online and/or products bearing copies of the Designs for commercial benefit, including without limitation, through Defendant Internet Stores. Defendants are using identical copies of Neman's Designs. True and correct copies and screen captures of Defendants' unauthorized use are depicted in **Exhibit B**, this exhibit also includes comparisons of the allegedly infringing products and Neman's Designs.

**ANSWER TO PARAGRAPH 45:**

Denied.

46.     The Defendant Internet Stores intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiffs from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting operations.

Through their operation of the Defendant Internet Stores, Defendants are directly and personally contributing to, inducing and engaging in the sale of counterfeit products as alleged, often time as partners, co-conspirators, and/or suppliers. Upon information and belief, Defendants are interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell counterfeit products.

**ANSWER TO PARAGRAPH 46:**

    Denied.

47.    Defendants go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Defendants also appear to intentionally omit accurate contact information when registering their respective stores. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the First Amended Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive operation, and to avoid being shut down.

**ANSWER TO PARAGRAPH 47:**

    Denied.

48.    The Infringing Products for sale on the Defendant Internet Stores bear similarities and indica of being related to one another, suggesting the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendants Internet Stores also include notable common features, including the

use of the same store name registration patterns, similar SEO tactics such as keyword stuffing, and similar titles for the products.

**ANSWER TO PARAGRAPH 48:**

    Denied.

    49.    Defendants are causing individual, concurrent and indivisible harm to Neman and the consuming public by (i) depriving Neman and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Neman's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value associated with the images, and (iii) increasing Neman's overall cost to market its goods and educate consumers via the Internet.

**ANSWER TO PARAGRAPH 49:**

    Denied.

    50.    As a result, Defendants are defrauding Neman and the consuming public for Defendants' own benefit. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear unknowing to customers to be authorized online retailer, outlet stores, or wholesalers selling genuine Subject Designs. Many of the Defendant Internet Stores look sophisticated and accept payment in US Dollars via credit or debit cards. Defendant Internet Stores include design elements that make it very difficult for consumers to distinguish such infringing sites from authorized seller websites.

**ANSWER TO PARAGRAPH 50:**

    Defendant admits it accepts payment in US Dollars. Defendant denies all remaining allegations in this paragraph.

51.     Upon information and belief, at all times relevant hereto, Defendants had full knowledge of Neman's ownership of the Subject Designs, including its exclusive right to use and license such Subject Designs, through Neman's numerous online profiles and features, online publications and press featuring Neman's work, Neman's social media accounts, and/or through viewing the Subject Designs on third-party websites (e.g., Tumblr, Pinterest, internet search engines, etc.).

**ANSWER TO PARAGRAPH 51:**

Denied.

52.     Defendants' use of the Subject Designs, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their infringing goods, is without Neman's consent or authorization.

**ANSWER TO PARAGRAPH 52:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 and, as such, denies the allegations.

53.     Defendants are engaging in the above-described infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Neman's rights for the purpose of trading on Neman's intellectual property and reputation.

**ANSWER TO PARAGRAPH 53:**

Denied.

54.     Neman has not in any way authorized Defendants, or any of them, to copy, reproduce, duplicate, disseminate, distribute, or create derivative works of the Subject Designs.

**ANSWER TO PARAGRAPH 54:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 and, as such, denies the allegations.

55.     If Defendants' intentional infringing activities are not preliminarily and permanently enjoined, Neman and the consuming public will continue to be harmed.

**ANSWER TO PARAGRAPH 55:**

Denied.

56.     Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

**ANSWER TO PARAGRAPH 56:**

Denied.

57.     Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Neman.

**ANSWER TO PARAGRAPH 57:**

Denied.

58.     Neman is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and their wrongful use of Neman's intellectual property rights by way of lost profits, loss of exclusivity, and lost value in the Subject Designs. The Defendants infringing activities have diminished Neman's ability to market and sell its Subject Designs, which is the lifeblood of its business.

**ANSWER TO PARAGRAPH 58:**

Denied.

59.     Neman should not have competition from Defendants because Neman never authorized Defendants to use Neman's Subject Designs.

**ANSWER TO PARAGRAPH 59:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 and, as such, denies the allegations.

60.    Neman has no adequate remedy at law.

**ANSWER TO PARAGRAPH 60:**

Denied.

## FIRST CLAIM FOR RELIEF

(For Copyright Infringement – Against all Defendants, and Each)

61.    Neman repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

**ANSWER TO PARAGRAPH 61:**

Defendant repeats, re-alleges, and incorporates herein by reference as though fully set forth, contained in the preceding paragraphs of the Answer.

62.    Neman has complied in all respects with the Copyright Act of the United States and other laws governing copyright and secured the exclusive rights and privileges in and to the copyrights at issue.

**ANSWER TO PARAGRAPH 62:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 and, as such, denies the allegations.

63.    Under 17 U.S.C. § 106, Neman has the exclusive rights and privileges to display the work publicly, reproduce, prepare derivate works, distribute copies, and import copies into the United States of the copyrighted Designs.

**ANSWER TO PARAGRAPH 63:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 and, as such, denies the allegations.

64.     Neman alleges that Defendants, and each of them, accessed the Subject Designs online through one of Neman's numerous public profiles or otherwise through an authorized distributor, advertisements, and widespread dissemination. Access can be further presumed given the identical copies of the Subject Designs shown on the Infringing Products.

**ANSWER TO PARAGRAPH 64:**

Defendant admits that Neman makes allegations in Paragraph 64, however, Defendant denies such allegations and all remaining assertions in the paragraph.

65.     Neman alleges that Defendants, and each of them, infringed Neman's exclusive copyrights by creating infringing derivative works, copying, displaying, and/or distributing works to the public based upon Neman's copyrighted art in violation of 17 U.S.C. § 106, as seen, without limitation, in the screen captures depicted in **Exhibit B**.

**ANSWER TO PARAGRAPH 65:**

Defendant admits that Neman makes allegations in Paragraph 64, however, Defendant denies such allegations and all remaining assertions in the paragraph.

66.     Due to Defendants' Infringing Use as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Neman's rights in the Subject Designs. As such, Neman is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of its rights in the Subject Designs in an amount to be established at trial.

**ANSWER TO PARAGRAPH 66:**

Denied.

67.     Defendants' conduct constitutes willful and direct copyright infringement. The similarities between the Subject Designs and Infringing Use further proves the willful and direct infringement by Defendants.

**ANSWER TO PARAGRAPH 67:**

Denied.

68.     On information and belief, Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

**ANSWER TO PARAGRAPH 68:**

Denied.

69.     Due to Defendants', and each of their acts of infringement, Neman has actually and proximately suffered actual, general, and special damages in an amount to be established at trial under 17 U.S.C. § 504(b) and (c).

**ANSWER TO PARAGRAPH 69:**

Denied.

70.     The harm caused to Neman is irreparable.

**ANSWER TO PARAGRAPH 70:**

Denied.

71.     Neman is entitled to temporary and permanent injunctive relief from Defendants' willful infringement.

**ANSWER TO PARAGRAPH 71:**

Denied.

72.    Neman complied with registration requirements for the Subject Designs before the commission of the infringement at issue and on that basis seeks statutory damages in an amount up to $150,000.00 per artwork per the Copyright Act.

**ANSWER TO PARAGRAPH 72:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 and, as such, denies the allegations.

73.    Neman is informed and believes and thereon alleges that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

**ANSWER TO PARAGRAPH 73:**

Defendant admits that Neman believes and therefore makes certain allegations in this paragraph, however, Defendant denies such beliefs and allegations and all remaining assertions in the paragraph..

**<u>SECOND CLAIM FOR RELIEF</u>**

(For Vicarious and/or Contributory Copyright Infringement – Against all Defendants, and Each)

74.    Neman repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

**ANSWER TO PARAGRAPH 74:**

Defendant repeats, re-alleges, and incorporates herein by reference as though fully set forth, contained in the preceding paragraphs of the Answer.

75.    On information and belief, Neman alleges that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of

the Subject Designs as alleged hereinabove. Such conduct included, without limitation, creating

derivative works, creating products which use Neman's Designs, and/or selling such derivative

works and products and that that Defendants knew, or should have known, were not authorized

to be published by Defendants.

**ANSWER TO PARAGRAPH 75:**

Defendant admits that Neman makes allegations in Paragraph 75, however, Defendant

denies such allegations and all remaining assertions in the paragraph.

76.     On information and belief, Neman alleges that Defendants, and each of them, are

vicariously liable for the infringement alleged herein because they had the right and ability to

supervise the infringing conduct and because they had a direct financial interest in the infringing

conduct. Specifically, Defendants, and each of them, profited in connection with the Infringing

Use, and were able to supervise the distribution, broadcast, and publication of the Infringing Use.

**ANSWER TO PARAGRAPH 76:**

Defendant admits that Neman makes allegations in Paragraph 76, however, Defendant

denies such allegations and all remaining assertions in the paragraph.

77.     By reason of the Defendants', and each of their, acts of contributory and vicarious

infringement as alleged above, Neman has suffered general and special damages in an amount to

be established at trial.

**ANSWER TO PARAGRAPH 77:**

Denied.

78.     Due to Defendants' acts of copyright infringement as alleged herein, Defendants,

and each of them, have obtained direct and indirect profits they would not otherwise have realized

but for their infringement of Neman's rights in the Subject Designs. As such, Neman is entitled

to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Neman rights in the Subject Designs, in an amount to be established at trial.

**ANSWER TO PARAGRAPH 78:**

Denied.

79.     On information and belief, Neman alleges that Defendants, and each of them, have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants, and each of them, to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000.00 per infringement and/or a preclusion from asserting certain equitable and other defenses.

**ANSWER TO PARAGRAPH 79:**

Defendant admits that Neman makes allegations in Paragraph 79, however, Defendant denies such allegations and all remaining assertions in the paragraph.

**ANSWER TO PLAINTIFF'S PRAYER FOR RELIEF:**

To the extent that a response is required to plaintiff's prayer for relief, Defendant denies that Plaintiff is entitled to any judgment against Defendant and/or an order granting them relief in any of the forms requested in parts a-o.

**DEFENDANT'S AFFIRMATIVE DEFENSE**

Defendant's affirmative defenses are listed below. By alleging the defenses set forth below, Defendant does not agree or concede that they bear the burden of proof or the burden of persuasion on any of these issues, either in whole or in part. Defendant reserve the right to amend its answer to add additional Affirmative Defenses consistent with the facts discovered in this action.

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff has failed to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims for copyright infringement are barred for lack of subject matter jurisdiction because Plaintiff lacks valid copyright registrations for the intellectual property rights asserted against Defendant.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's alleged copyright registrations are invalid and/or unenforceable. Plaintiff's alleged copyright registrations are invalid and/or unenforceable because Plaintiff engaged in fraud on the Copyright Office by knowingly and willfully submitting material misrepresentations to the Copyright Office. Plaintiff's alleged copyright registrations are invalid and/or unenforceable because the claimed work is not original and/or does not possess at least a minimum degree of creativity. Additionally, Plaintiff's alleged copyright registrations are photographs, not 3-D clothing designs applicable for copyright protection. This is affirmed by their respective registrations, detailing the alleged copyright registrations as only photographs. These are further invalid because the photographs are functional and/or not capable of existing independently.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff does not have ownership rights in its claimed copyrighted materials.

## FIFTH AFFIRMATIVE DEFENSE

Defendant has not and do not infringe Plaintiff's alleged copyright registrations.

## SIXTH AFFIRMATIVE DEFENSE

On information and belief, Plaintiff's claims are barred, in whole or in part, by the doctrine of laches, estoppel, acquiescence, waiver, and unclean hands. In addition, Plaintiff is engaging in copyright misuse by enforcing rights in works that are not copyrightable and copyrights obtained

through fraud on the Copyright Office to hinder legitimate marketplace competition from Defendant (and others) who wish to offer clothing manufactured by a common supplier(s) and Plaintiff is improperly using the threat of protracted litigation to try and extort settlement offers and/or deny the consumers' ability to see the clothing visually.

SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Defendant is authorized to publish the accused photographs and/or are owners of the copyrights to the accused photographs.

EIGHTH AFFIRMATIVE DEFENSE

Defendant alleges that Plaintiff did not suffer any damages. Alternatively, while denying all the allegations of the Complaint regarding liability, injury, and damages allegedly sustained by Plaintiff, to the extent Plaintiff may be able to prove any injury or damage, any such injury or damage was not proximately related to any act or omission of Defendant.

NINTH AFFIRMATIVE DEFENSE

To the extent Plaintiff suffered any damages, which Defendant expressly deny; Plaintiff has failed to take steps necessary to mitigate the damages sustained.

September 16, 2024

Respectfully Submitted,

*/s/ Steven G. Kalberg*
David R. Bennett
Steven G. Kalberg
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com
skalberg@directionip.com

*Attorneys for Defendant No. 16 hibluco*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2024, I electronically filed the above documents with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.

*/s/ Steven G. Kalberg*
Steven G. Kalberg