IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEMAN BROTHERS & ASSOCIATES, INC., | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) No. 24 C 05666 |
| v. | )<br>) Judge John J. Tharp, Jr. |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A, | )<br>)<br>)<br>) |
| Defendants. | |

## ORDER

For the reasons set forth in the Statement below, the defendant Ranphee's motion to dismiss the complaint and strike service of process [60] and motion to modify the preliminary injunction [62] are both denied.

## STATEMENT

The plaintiff Neman Brothers & Associates, Inc. holds federal copyright registrations for two-dimensional textile designs and has sued 20 defendants for alleged copyright infringement. Neman alleges the defendants operate online stores via Amazon, TEMU, and Walmart, through which they sell products that feature, without license or permission, Neman's copyrighted designs. Defendant Ranphee is one of the defendants.

On August 5, 2024, the Court entered a temporary restraining order [17] which allowed Neman to serve the defendants by electronically publishing links to any filings in the case on a website, to be distributed to the defendants via email. The order also directed the Clerk of Court to issue a "single original summons" that would apply to all Defendants. In doing so, the Court decided that "[t]he combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections." The TRO also ordered all third-party platforms, including Amazon, to freeze any financial accounts connected to the defendants. Ranphee filed an appearance in this case on October 10, 2024 [53] and since then has apparently corresponded via email with plaintiff's counsel. Decl. of Trevor W. Barrett (hereinafter, "Barrett Decl."), ¶ 8, ECF No. 82. The Court entered a preliminary injunction against all defendants on September 4, 2024 [33]. The preliminary injunction also authorized email and website publication service and continued the freeze on the defendants' financial accounts.

Ranphee now moves to dismiss the complaint for failure to state a claim, improper joinder, and lack of personal jurisdiction based on alleged improper service and insufficient contacts with Illinois. Ranphee separately moves to modify the preliminary injunction to limit the asset freeze to $10,000.

I.      **Personal Jurisdiction**

Ranphee cites a number of alleged deficiencies in Neman's service of process and argues that because Neman did not serve Ranphee in compliance with Federal Rule of Civil Procedure 4, this Court does not have personal jurisdiction over it. Ranphee further argues that the Court cannot exercise personal jurisdiction because Neman has not alleged the "minimum contacts" necessary to subject Ranphee to suit in Illinois. The Court addresses both lines of argument in turn.

   A.      *Service of Process*

      1.      Hague Convention

Ranphee first contends that service via email, which this Court authorized in the TRO, is improper under Federal Rule of Civil Procedure 4(f)(3) because it is prohibited by "international agreement" – here, the Hague Convention. Ranphee is located in China, which, as a signatory to the Hague Convention, objected to the portion of the Convention which provides: "Provided the State of destination does not object, the present Convention shall not interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Service Convention Art. 1, 20 U.S.T. 361; *see also NBA Properties, Inc. v. Schedule A*, 549 F. Supp. 3d 790, 798 (N.D. Ill. 2021), *aff'd sub nom. NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022). Ranphee argues that by objecting to that provision, China has precluded service by email on persons or entities located in China.

Neman responds that 1) the Hague Convention does not apply here because Ranphee's address was not known to Neman at the time of service (20 U.S.T. 361 ("This convention shall not apply where the address of the person to be served with the document is not known")), and 2) even if it did, China's objection to service by "postal channels" does not encompass service by email or electronic publication.

On the first point, plaintiffs must make "reasonably diligent efforts to ascertain and verify [a] defendant's mailing address" before courts will accept that the defendant's address is "not known" for service purposes. *NBA Properties*, 549 F. Supp. 3d at 796. When Neman moved for service of process via email, it argued that e-commerce stores such as the defendants' often use false physical addresses to conceal their locations, and primarily use electronic communication to communicate with their platforms and customers. The Court accepted that argument then and still does. Ranphee argues that Neman could have obtained its address through reasonable diligence but does not point to any evidence indicating that is the case, such as a website clearly showing its physical address. Ranphee asserts: "While … the supporting papers for the Renewed Motion for Temporary Restraining Order[] remain[] under seal, we believe [they] will show the name and address of the Moving Defendant[] was on the website and would be possible to obtain with reasonable diligence." Def. Ranphee's Mot. to Dismiss, 2, ECF No. 61. This speculation is confusing, as Ranphee has been served with unsealed versions of the supporting TRO materials

2

filed by the plaintiff, and therefore should be able to see that they do *not* show an address. Decl. of Trevor W. Barrett, ¶ 3, ECF No. 82; Ex. B to Complaint, 13, ECF No. 13-1.

Even assuming Ranphee's address could have been discovered by the plaintiff with reasonable diligence, and was therefore "known" for purposes of the Hague Convention, the Court is persuaded by the majority of courts in this jurisdiction which have held that even where the Hague Convention does apply, and a defendant is located in China, email service is an acceptable and sufficient method of service. *See NBA Properties*, 549 F. Supp. 3d at 798; *Peanuts Worldwide LLC v. Schedule A*, 347 F.R.D. 316, 330 (N.D. Ill. 2024); *Hangzhou Chic Intelligent Tech. Co. v. Schedule A*, No. 20-cv-4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021); *Oakley, Inc. v. Schedule A*, No. 20-cv-05049, 2021 WL 2894166, at *4 (N.D. Ill. Jul. 9, 2021). Recognizing that there is no controlling precedent on the issue, and that some courts have viewed it differently (*see Luxottica Grp. S.p.A. v. Schedule A*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019)), the "overwhelming majority of courts in this district" have concluded that nothing in the text of the Convention (including objection to service by "postal channels") prohibits email service on foreign defendants at unknown locations. *Klauber Brothers, Inc. v. Schedule A*, No. 23-cv-10407, 2024 WL 182209, at *3 (N.D. Ill. Jan. 17, 2024). The Court agrees that is the logical reading of the Convention's text.

2.  Form of Summons

Ranphee also argues that Neman failed to perfect service because it did not obtain an individual summons for each and every defendant, which, it contends, is required by Rules 4(b) and 10(a). But—as multiple courts have already noted in response to this same argument—Rule 4(b) specifically contemplates a single summons "addressed to multiple defendants." *See Peanuts*, 347 F.R.D. at 323; *Klauber*, 2024 WL 182209 at *3. Further, Rule 10(a) requires only that the "title of the ***complaint*** … name all the parties"—not the summons. Here, the summons and complaint properly referenced the parties via the Schedule A filed on the docket, which was both sufficient under Rule 4 and consistent with the Court's order.

3.  Translation

Ranphee also contends that Neman should have served the summons and pleadings with a "local language translation." In support, Ranphee cites to two out-of-circuit cases in which courts used their discretion to order service via local language notices published in newspapers. Both cases involved extremely different sets of facts from those at issue here. *See Langford v. Juárez Cartel, et al.*, No. 20-cv-00132, Dkt. No. 19 (D.N.D. Oct. 28, 2020) (requiring a notice to alleged cartel members be published in Spanish in Mexican newspaper); *Mwami v. U.S., et al.*, No. 1:99-cv-00125, Dkt. No. 23 (D.D.C. Aug. 2, 1999) (requiring service of Osama bin Laden via publication of Arabic notice in international newspapers). No authority, other than a court's discretionary order, requires plaintiffs to provide translations to defendants. *See Peanuts*, 347 F.R.D. at 323; *Klauber*, 2024 WL 182209 at *3. Nor has Ranphee indicated in any way that it required such translation, given that its counsel has been corresponding with the plaintiff in English.

    4.    Confirmation of service

Finally, Ranphee argues that Neman should have confirmed in its affidavit of service that the emails sent to the defendants did not result in any "bounce back" messages, and were sent six times, in line with the requirement that service by publication be effected by six separate publications. Again, no authority requires Neman to do either in this case, and Ranphee does not point to any. Ranphee cites to cases in which courts have ruled that the lack of a bounce back message verified the validity of an email address. *See, e.g.*, *Chanel, Inc. v. Qi*, No. C-11-0362, 2011 WL 13244512, at *2 (N.D. Cal. Jan. 27, 2011) (where email to defendant did not bounce back, email was "valid and operational" and could be used for service). But that does not mean that Neman must affirmatively represent that it did not receive bounce back message. Further, and most significantly, Ranphee has been corresponding with the plaintiff *via email*; no further validation of its email address is needed.

As to the argument that the email should have been sent six times because that is how service via newspaper is completed, the Court echoes the ruling in *Klauber*: "Comparing service by sending an email to an individual email address that indisputably belongs to the defendant to service by publishing a notice in a newspaper where the defendant may be among hundreds of thousands of readers defies logic." 2024 WL 182209 at *5.

Raphee has been served in compliance with the Federal Rules of Civil Procedure and the Court denies both its motion to strike service of process and motion to dismiss for lack of personal jurisdiction on that basis.

    B.    *Minimum Contacts*

Ranphee next argues that Neman has not alleged that Ranphee actually sold its products to Illinois customers, and that even if it had alleged some de minimis sales, that would be insufficient to confer personal jurisdiction over Ranphee. The latter argument been squarely rejected in this Circuit. *See NBA Properties*, 46 F.4th at 624 (just one sale to a buyer in Illinois showed that a defendant was "target[ing] the Illinois market" and was therefore sufficient to establish personal jurisdiction). As to the former, Ranphee is correct that while Neman attached to its TRO motion screenshots showing an Illinois address entered as the "deliver to" address during an attempted order, those screenshots do not show confirmation of an actual shipment to Illinois. At least one court in this jurisdiction has held that similar evidence at the pleading stage is insufficient to make a *prima facie* showing of personal jurisdiction. *See Unicolors, Inc. v. Shewin Flagship Shops*, No. 1:24-cv-2987, 2024 WL 4567268, at *8-*9 (N.D. Ill. Oct. 24, 2024).

However, Neman has responded to Ranphee's motion with evidence, obtained from Amazon during the expedited discovery granted by the TRO, that Ranphee sold nearly 600 units of the infringing products to Illinois buyers. Barrett Decl. ¶ 10. Ranphee has not disputed the veracity or propriety of that evidence, except to say that it was not in the record at the time its motion was filed. The Court will therefore consider Neman's evidence. Six hundred sales to Illinois are more than enough "contacts" to establish personal jurisdiction over an out-of-state defendant under *NBA Properties*, which found that a single sale to the relevant jurisdiction was enough. 46 F.4th at 624. There is therefore no question that Ranphee "purposefully directed" its conduct at Illinois. *Id*.

Neman has established personal jurisdiction over Ranphee, and so Ranphee's motion to dismiss the complaint on that basis is denied.

## II. Joinder

Ranphee has raised a thin argument that Ranphee has not properly alleged facts supporting permissive joinder under Rule 20, arguing generally that it is insufficient for Neman to argue only that the defendants are all located in close proximity in China. That is true, but as Neman points out, it has alleged much more in support of its contention that the defendants' alleged wrongdoing arises out of the "transaction or occurrence." Fed. R. Civ. P. 20(a)(2)(A). Neman alleges that the defendants use the same third-party marketplace platforms (Amazon, Temu, and Walmart), and maintain similar profiles on their online stores. Their listings feature similar, and in some cases identical, product photos, obscure the sellers' identities, and use similar SEO tactics. While the defendants may be operating independently, these allegations suggest that the defendants "take advantage of a set of circumstances—the anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate [the plaintiff's copyrights] with impunity." *Bose Corp. v. Schedule A*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). This common, surreptitious conduct is the "defining aspect of the harm" alleged by Neman and creates a logical relationship among the parties and claims in the case. *Id*. 517.

Ranphee also does not point to any prejudice or expense it will incur if joinder is permitted, nor does the Court see any. Ranphee is still free to litigate its claims to the extent it wishes, or settle with the plaintiff, and the fact of joinder will not prevent or impede it from doing so. The Court therefore declines to sever the parties.

## III. Failure to State a Claim

In issuing the TRO and Preliminary Injunction, the Court found that Neman had presented enough facts and evidence to demonstrate a likelihood that it would succeed on the merits of its infringement claim. That ruling was based on the complaint, TRO and PI motions, and supporting evidence showing evidence of infringement by all defendants, including Ranphee. Ranphee makes a disingenuous argument that it cannot tell from the sealed exhibits what evidence Neman has set forth. But Neman served Ranphee via email with all material case documents on August 26, 2024 (Barrett Decl. ¶ 3), and Ranphee otherwise offers no arguments to persuade the Court that it should reconsider its prior determination.

Ranphee's motion to dismiss for failure to state a claim is denied.

## IV. Cap on Asset Restraint

Ranphee has separately moved to modify the preliminary injunction to cap the asset freeze at $10,000. It posits in its motion—without any documentary evidence or supporting declaration—that the amount frozen now totals $48,661 but that it is "prepared to testify and submit an affidavit" demonstrating that while its sales over the last two years totaled $205,505.00 in revenue, its profits were only $8,313.70. The Court shares Neman's skepticism of those figures, particularly given Neman's early discovery suggesting that Ranphee has collected over $475,000 in revenue from infringing sales.

In any event, Ranphee will need to present far more than what it has put forward in its motion, and more than an affidavit, to secure a modification of the asset freeze. While it is true that where the amount of profits is known and quantifiable, an asset freeze should apply only to that amount, in order "[t]o exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Monster Energy Co. v. Weensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (cleaned up); *see also Deckers Outdoor Corp. v. Schedule A*, No. 13-cv-07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). Ranphee will therefore need to provide specific, detailed records, supported by a sworn declaration, clearly identifying its profits from the allegedly infringing sales. *See Luxottica USA LLC v. Schedule A*, No. 14-cv-9061, 2015 WL 3818622, at *5 (declining to modify asset restraint where transactions spreadsheet proffered by defendant was unsupported by declaration, did not include quantities associated with sales, and contradicted other evidence in record); *Antsy Labs, LLC v. Schedule A*, 21-cv-3289, 2022 WL 17176498, at *5 (N.D. Ill. Nov. 23, 2022) (declining to modify asset restraint where defendant proffered incomplete sales records and a declaration contradicted by other evidence).

Ranphee is free to renew its motion with such supporting evidence. For now, it has not met its burden to show that a modification to the asset restraint is warranted, and so its motion is denied.

\*\*\*

Ranphee's motion to dismiss the complaint and strike service of process [60] and motion to modify the preliminary injunction [62] are both denied.

Date: December 10, 2024

John J. Tharp, Jr.
United States District Judge